**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**HEATHER DILLON, ET AL.**                                                              **PLAINTIFF**

**V.**                                                              **CAUSE NO. 3:18-CV-208-CWR-FKB**

**STATE LIQUEFIED COMPRESSED**                                              **DEFENDANTS**
**GAS BOARD, ET AL.**

**ORDER**

The Court considers three items in the above-styled case. Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction[1] and a Motion to Open Discovery.[2] Defendants filed a Motion to Dismiss. After considering the motions, evidence, and applicable law, the Court denies Plaintiffs' Motions and grants Defendants' Motion.

**I.     Facts**

On September 25, 2017, a propane gas explosion killed three people and severely burned two others at a mobile home in Bay Springs, Mississippi. The Liquefied Compressed Gas Division of the Mississippi Insurance Department and State Fire Marshal initiated an investigation into the incident.[3] The investigation revealed that Heather Dillon—an employee of Delta Propane Gas, Inc., a subsidiary of United Propane Gas, Inc.—serviced the propane system before the explosion. Investigators found that Dillon improperly serviced the system on August

---

[1] Plaintiffs filed four separate motions: Dillon filed TRO and preliminary injunction motions, and Delta Propane and United Propane filed TRO and preliminary injunctions motions. All motions and memoranda are identical. Plaintiff never invoked the procedures set forth under L.U.Civ.R. 7(b)(8) to have a hearing on these matters.

[2] Dillon and Delta Propane/United Propane filed two separate but identical Motions for Discovery.

[3] LC Gas Division is one of seven divisions of the State Fire Marshal Office. Its mission is "to enforce the laws and regulations regarding the manufacturing of liquefied gases located in Mississippi." *See L.C. Gas Mission*, Liquefied Compressed Gas, www.mid.ms.gov/sfm/liquefied-compressed-gas (last visited May 25, 2018). LC Gas Division, along with the Fire Marshal, test and inspect gas systems for compliance with national standards when propane-related fires occur.

22, August 28, and September 25, 2017, and failed to notify the Insurance Department of certain services and alterations made to the system.

On December 4, 2017, the Liquefied Compressed Gas Board served Dillon, Delta Propane, and United Propane with a "Notice of Hearing and Statement of Charges," containing seven charges of alleged violations of the National Fire Protection Association standards and state statutes and regulations. The Notice advised them that a hearing would take place on January 11, 2018, and that the proceeding could result in the issuance of monetary fines and/or permit or certificate revocation, subject to the Insurance Commissioner/State Fire Marshal Mike Chaney's approval. The Notice further specified they have a right to respond to the charges in writing, appear at the hearing to present testimony and evidence, and retain a lawyer and court reporter. The Board has since rescheduled the hearing to July 10, 2018.

In response to the Notice, Dillon and United Propane expressed concerns about discovery and hearing procedures. Specifically, they asked for the appointment of an impartial hearing officer and an assistant attorney general to advise the hearing officer. They requested to take depositions, inspect physical evidence, and obtain a sample of the propane tested by the Insurance Department.

The Board denied these requests. It provided the following procedural rules for the hearing, pursuant to Miss. Code § 75-57-105: "maintaining order and decorum in the hearing, guiding the proceedings, ruling on objections, and speaking up and asking questions at any time." It further stated that it would not produce any physical evidence because the Insurance Department needed to keep the evidence for an ongoing criminal investigation. The Board specified that, as in other administrative hearings, the formal rules of evidence would not apply.

On March 19, 2018, Chaney issued an amended "Notice of Hearing and Statement of Charges," containing nine charges. A month later, the Board advised Dillon and Delta Propane that they should submit any requests regarding discovery or other procedural matters in writing by May 7, and the Board would reconsider any requests at its May 10, 2018 meeting, which Dillon and Delta Propane were invited to attend.

Plaintiffs Dillon, Delta Propane, and United Propane responded by filing the instant suit against the Board; the Board members,[4] in their official and individual capacities; and the Insurance Commissioner/State Fire Marshal Chaney, in his official and individual capacities. Plaintiffs bring a Fourteenth Amendment procedural due process claim under 42 U.S.C. § 1983 and seek to enjoin the pending administrative proceeding. They allege that the Board members, as industry competitors of Delta Propane and United Propane, have a direct financial interest in the outcome of the hearing, rendering the Board unduly biased.

On April 13, 2018, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction to enjoin the proceeding. In response, Defendants filed a Motion to Dismiss, arguing that the abstention doctrine requires this Court to abstain from interfering with an ongoing state proceeding. The magistrate judge stayed discovery on April 26, 2018, pending the Court's decision on the Motion to Dismiss. In light of the stay, Plaintiffs filed a Motion to Open Discovery and for a Rule 56(d) Summary Judgment Continuance on May 14, 2018. They ask that the case proceed to a preliminary injunction hearing and request time for discovery.

## II.    Defendants' Motion to Dismiss

### A.    Legal Standard

---

[4] The Board members are Dustin D. Johnson, Vernon Greenlee, Ben Hill, Al Allen, Robert Y. Love, Thomas M. Graham, and Nathan Miller.

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion, the Court accepts all factual allegations as true and makes all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's complaint "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 677-78 (quotation marks and citation omitted). The plaintiff's claims need not include "detailed factual allegations," but the complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. at 678 (quotation marks and citation omitted). The plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### B. *Younger* Abstention

Where a district court has jurisdiction over a case, the court has a "virtually unflagging obligation" to hear and decide the case.[5] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Thus, the general rule is that "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id*. But there are exceptions, one of which is the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971).

---

[5] More recently, the Supreme Court has again stressed that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Sprint Comm'ns v. Jacobs*, 571 U.S. 69, 77 (2013) (quotation marks and citation omitted).

4

Defendants assert that *Younger* abstention applies here. In general, the *Younger* doctrine requires that federal courts decline to exercise jurisdiction over lawsuits when three conditions are met: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). As Plaintiffs do not dispute the first and second prongs, the Court will determine only whether the third prong is met.

To satisfy the third *Younger* requirement, the Court must find that Plaintiffs will have an adequate opportunity in the state proceeding to raise its constitutional challenges. *All Am. Check Cashing, Inc. v. Corley*, 191 F. Supp. 3d 646, 656 (S.D. Miss. 2016). Defendants assert that Plaintiffs can raise its constitutional challenge for consideration at the Board hearing, as well as on appeal to the state circuit court and in subsequent state appeals. In response, Plaintiffs argue that administrative tribunals are generally not competent to hear constitutional challenges and that "Mississippi State Courts will not assure adequate vindication of constitutional rights."

The Court disagrees with Plaintiffs. There is an adequate opportunity to raise constitutional challenges in state court "unless state law clearly bars the interposition of the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 426 (1979); *see Ballard v. Wilson*, 856 F.2d 1568 (5th Cir. 1988) ("[I]ntervention is appropriate only if a party has no opportunity to present his federal claim in a state proceeding"). Mississippi Code § 75-57-117 provides that "[a]ny individual aggrieved by a final decision of the board shall be entitled to judicial review" in state circuit court. Plaintiffs cite to no Mississippi authority that the provision does not authorize judicial review of constitutional claims. *See Wightman v. Texas Supreme Court*, 84 F.3d 188, 190 (5th Cir. 1996) (finding that plaintiff had adequate opportunity to raise constitutional claims

5

in state investigatory hearing and in subsequent appeals where no state agency rules or statutes prevented state review of his constitutional claims). The third element is therefore satisfied.

    **C.**    **Bias Exception**

Where all three *Younger* elements are satisfied, a "federal court can assert jurisdiction only if certain narrowly delimited exceptions to the abstention doctrine apply." *Bice*, 677 F.3d at 716. Plaintiffs argue that the bias exception precludes *Younger* abstention. They contend that the Board members have a direct financial interest in the outcome of the hearing and cannot fairly adjudicate the case.

Constitutional due process requires fair and impartial decision makers. *Ford Motor Co. v. Tex. Dept. of Transp.*, 264 F.3d 493, 510 (5th Cir. 2001). This requirement applies equally to proceedings before an administrative agency. *Id*. The Supreme Court has provided the following examples of constitutionally unacceptable decision makers: (1) a decision maker who has a pecuniary interest in the outcome of the case; (2) a decision maker who has been the target of personal abuse or criticism from the claimant; and (3) a decision maker who both investigates and adjudicates complaints. *Id.* at 511-510.

A bias claim requires a "high burden of persuasion." *Hasie v. Office of Comptroller of Currency of U.S.*, 633 F.3d 361, 367 (5th Cir. 2011). To prevail, the plaintiff must "overcome a presumption of honesty and integrity in those serving as adjudicators and must convince that . . . conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id*. at 368 (quotation marks and citation omitted).

In support of their bias claim, Plaintiffs rely on *Gibson v. Berryhill*, 411 U.S. 564 (1973). In that case, the Alabama legislature enacted a statute barring the practice of optometry in the

state by optometrists who were not members of the Alabama Optometric Association. The Association filed charges with the Alabama Board of Optometry against several optometrists employed by Lee Optical Company that were not members of the Association. Two days after charges were filed, the Board—who were all members of the Association—filed its own suit in state court against Lee Optical, seeking to enjoin the company from engaging in the "unlawful practice of optometry." *Id*. at 568.

While the state case was on appeal, Lee Optical sued the Board, its members, and the Association in federal court. "The thrust of the complaint was that the Board was biased and could not provide the plaintiffs with a fair and impartial hearing in conformity with due process of law." *Id*. at 570. The district court enjoined the Board hearing based on a number of factors. First, the Board "act[ed] as both prosecutor and judge in delicensing proceedings [and] had previously brought suit against the plaintiffs on virtually identical charges in the state courts." *Id*. at 571. Second, the Board had a substantial financial stake in the matter. "Lee Optical Co. did a large business in Alabama, and that if it were forced to suspend operations the individual members of the Board, along with other private practitioners of optometry, would fall heir to this business." *Id*. Third, "only members of the Alabama Optometric Association could be members of the Board" and the "Association excluded from membership optometrists such as the plaintiffs who were employed by other persons or entities." *Id*.

The Supreme Court affirmed the district court's decision that abstention was inappropriate, based on the finding "that the aim of the Board was to revoke the licenses of all optometrists in the State who were employed by business corporations such as Lee Optical, and that these optometrists accounted for nearly half of all the optometrists practicing in Alabama." *Id*. at 578. The *Gibson* Court ruled that the Board was "so biased by prejudgment and pecuniary

7

interest that it could not constitutionally conduct hearing looking toward the revocation of [the plaintiffs'] licenses to practice optometry." *Id*.

Defendants argue and the Court agrees that *Gibson* is distinguishable. First, the administrative proceeding in this case arose from a propane gas explosion involving a single propane company and its Mississippi subsidiary. Unlike *Gibson*, the Board members in this case do not have a substantial financial interest in the pending administrative hearing. "There is no long-running, statewide, market-share battle between large factions of the propane gas industry at play here."

Second, the Alabama board in *Gibson* acted as both prosecutor and judge in the administrative proceedings. This "indicate[d] that members of the Board might have preconceived opinions with regard to the cases pending before them." *Gibson*, 411 U.S. at 571 (quotation marks omitted). That is not the case here. LC Gas Division, a state entity and not a market competitor of United Propane or Delta Propane, investigated the explosion and initiated the charges.

Third, Mississippi law does not restrict Board membership to a particular association or faction within the propane gas industry. Any "individuals who are in the liquefied compressed gas industry doing business in the State of Mississippi" are qualified to serve on the Board. Miss Code Ann. § 75-57-101(1)(a)

Fourth, the Alabama board in *Gibson* had exclusive authority to issue, suspend, or revoke optometry licenses. Here, revocation is subject to the Insurance Commissioner's approval. Miss. Code Ann. §75-57-109(2).

For these reasons, Plaintiffs have failed to demonstrate that the Board and its members have any permissible financial bias that would prevent them from functioning as impartial

8

decision makers. Therefore, the Court concludes that the requirements for *Younger* abstention are met and that no exception applies.

## III.     Plaintiffs' Motions

Plaintiffs' petition for injunctive relief asks this Court to foreclose a state proceeding. As discussed above, the *Younger* abstention doctrine requires that the Court abstain from and dismiss Plaintiffs' claims for injunctive and declaratory relief and deny its motion for injunctive relief. *La. Debating and Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1489 (5th Cir. 1995); *see Milone v. Flowers*, 758 F. Supp. 2d 362, 364 (S.D. Miss. 2010) (if *Younger* requirements are satisfied, "the district court must dismiss the federal action and allow the state process to continue"). It follows that Plaintiffs' Motion to Open Discovery is denied as well.

Although unable to consider Plaintiffs' constitutional challenge, the Court has concerns about the spoliation of evidence in this case. To the Court's knowledge, Defendants have refused to turn over samples of the propane and allow Plaintiffs to inspect other physical evidence at the scene. Access to evidence is essential to Plaintiffs mounting a defense against the administrative charges brought against them. But those concerns should be presented to the Board or to the state courts on appellate review..

## IV.     Conclusion

Plaintiffs' Motions are denied. Defendants' Motion to Dismiss is granted. A separate Final Judgment shall issue.

**SO ORDERED**, this the 4th day of June, 2018.

                                                                    s/ Carlton W. Reeves
                                                                    UNITED STATES DISTRICT JUDGE